DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF ARIZONA,

### JANUARY TERM, 1866.

---

J. H. DAVIS, RESPONDENT, *v.* JOHN SIMMONS, AP-
PELLANT.

ESSENTIAL LEGAL REQUISITES OF POSSESSORY RIGHT TO PUBLIC LANDS in
Arizona, are the intention of the settler to permanently occupy and im-
prove them for his home, and the manifestation of that intention, as
early as practicable, by such improvements and badges of ownership as
make it known to others. And any settlement, cultivation, or improve-
ment, in pursuance of this intention, is sufficient to secure this right to
the occupant, and to enable him to maintain ejectment against any one
who disturbs him therein.

FACT THAT TRACT OF LAND CLAIMED BY SETTLER IS ONE MILE LONG, and
only one fourth of a mile in width, does not invalidate his claim, or jus-
tify another in appropriating any portion of it.

OFFER OF CLAIMANT OF LAND TO BUY HIS PEACE is not, if rejected, the
surrender of any legal advantage, or the admission of an adverse claim.

THE facts are stated in the opinion.

*J. P. Hargrave,* for the appellant.

The mere entry upon public land without inclosing it,
gives no right of action on the possession alone. The com-

plainant must show affirmatively, that the land is open to settlement under the Act of Congress, and a compliance with the provisions thereof. He must be a citizen of the United States, and otherwise competent to avail himself of the pre-emption laws of the United States. The bare residence on a part of the land, and the tracing of lines, or putting up stakes or monuments designed to indicate boundaries, are not sufficient. *Sweetland* v. *Froe*, 6 Cal., 147; *Wright* v. *Whitesides*, 15 Id. 47, 48.

The possessory act of the Territory of Arizona, approved November 9, 1864, only gives protection to those who have settled upon, cultivated, or improved the public lands, for the purpose of availing themselves of the pre-emption laws of the United States. The complaint avers ownership of the land in question, and an adverse holding by the defendant.

The findings of the court, that the land is part of the public domain of the United States, and that the facts stated in plaintiff's complaint are sustained by the proof, are contradictory, vague, and insufficient to support the judgment. *Lewis* v. *Myers*, 3 Cal. 475.

The finding of the court, that the material allegations in the complaint are true, is insufficient. *Breeze* v. *Doyle*, 19 Cal., 101.

The true test of the sufficiency of the findings of the court is this: Would they be sufficient if presented by a jury in the form of a special verdict?

The facts found by the court form the basis of the judgment in like manner as the verdict of a jury does. *Russel* v. *Armador*, 2 Cal. 305.

*James Anderson*, for the respondent.

There having been no motion for a new trial in the court below, this court will not inquire whether the facts found by that court are supported by the evidence, and the only question presented to this court is whether the facts found by the court below are sufficient to sustain the judgment. *Rhine* v. *Bogardus*, 13 Cal. 73; *Griswold* v. *Sharpe*, 2 Id. 17; *Wheeler* v. *Hays*, 3 Id. 286.

The facts found by the court below are sufficient to warrant the judgment. Laws of Arizona Territory: Act concerning possessory rights on public land.

By the COURT:

This case arose in the court below, on the complaint of Davis against Simmons, to recover possession of the eastern half of a tract of land in Yavapai county, the whole of which is described in the said complaint as follows: "Situate on Willow creek, commencing at a stake near a hill at the south-west corner, thence north one fourth of a mile to a stake, thence east one mile to a stake, thence south one fourth of a mile to a stake, thence west one mile to the place of beginning. The said ranch being about one mile west from the house of Giles & Co., and embracing not exceeding but about one hundred and sixty acres." The plaintiff also claims two thousand dollars damages, for the detention of the described premises and costs. The date of the summons is June 5, 1865. The date of the answer, which is a mere general denial of the allegations of the complaint, is not given in the transcript before this court. On the trial of the cause the parties waived a jury, and the conclusions of law on the facts found, as stated by the court, were as follows: "That judgment must be entered for plaintiff, for the possession of about eighty acres of land, or so much of defendant's claim as may encroach on plaintiff's as originally stepped and staked by him, one quarter of a mile wide and one mile long, according to the description contained in plaintiff's complaint, with damages in the sum of six hundred dollars, for the wrongful taking and retention of said lands, to wit, about eighty acres at the eastern end of plaintiff's claim as described as aforesaid, and that execution issue according to law for the said sum of money, and that the sheriff, by a writ of restitution, put the plaintiff in possession of said lands, as aforesaid, and for all costs and disbursements in the said suit." The date of the trial and decision of the court are not given, but the transcript states that judgment was entered thereupon, with costs taxed at eighty-nine dollars and ninety cents, May 9, 1866, which was probably meant for 1865, as appears from subsequent dates. There appear to have been no exceptions made at the trial, and no further proceedings in the case, till January 22, 1866, when the defendant gave notice of his appeal "from the whole judgment entered against him," and "which is (generally) assigned as error, as being contrary to law,

and not supported by the facts found." It is not necessary to cite all the facts here; a condensed statement of them will, however, show that they fully sustain the judgment rendered in the case. From these it appears that the plaintiff, Davis, took possession of the land in controversy about the eleventh of November, 1864, measured it, put up a summer house of poles, planted in the ground, covered with brush, and placed a written notice of his claim thereupon. The plaintiff sowed a small piece of wheat November 12, 1864, and cultivated about six acres on the upper part of his claim as described. It appears that the plaintiff saw no improvement on this land as described, and did not know of the defendant's claim till about the first of the succeeding April. On the second of the succeeding January he filed with the county recorder a copy of the notice fixed to his building on the eleventh of November, 1864. It appears, from the facts as found by the court, and which seem not to be denied or controverted, that on the tenth or twelfth of December, 1864, the defendant took possession of the land in controversy, and so much more as formed with it a square, measured it by stepping, and planted stakes for corner marks, and soon after hauled some logs for a cabin, and broke about one acre of land on the tract in controversy. The defendant's building was not finished for a considerable time afterwards, in consequence of the snow. It further appears that the defendant on the fourth of May, 1865, prevented the plaintiff from going or cutting grass on the land in controversy; that he cultivated a portion of it, and gathered from it about twenty-eight thousand pounds of hay, which he sold at forty-five dollars per ton. The defendant himself testifies on the trial, that he saw the plaintiff's house when he first went and set his stakes on the land in controversy, and it appears that the defendant's father, for whom the land was originally taken up, had seen the plaintiff's notice. As early as January, 1865, it seems the Messrs. Steinbrook talked with defendant on the land in controversy as to the location or building of the plaintiff thereon. The land in controversy was part of the public domain of the United States, and at the time referred to, unsurveyed.

The essential legal requisites of a possessory right in lands here, are the intention of the occupant permanently to oc-

cupy and improve the same for his home, and the manifestation of that intention as early as practicable, by such improvements and badges of ownership as shall make it known to others. By our act, Compiled Laws, p. 536, sec. 1, any settlement, cultivation, or improvement in pursuance of this intention is sufficient to secure this right. This intention of permanent occupancy as a home, and sufficient improvement to proclaim it to the world, are all that our act concerning possessory rights in public lands, or the homestead laws of the United States, require. The plaintiff's intention to occupy the land in question as a home seems to have been continued at great peril, until he was ousted by the defendant early in 1865. His simple improvements and badges of ownership were competent notice of ownership to all the world. They were quite equal to those of defendant, with the legal advantage of a whole month's priority. The conclusion therefore is, that the plaintiff ought to have restitution of the land which he claims in the present case.

The damages of six hundred dollars are not excessive; for it appears that the defendant, in a single season, cut and sold hay of about that value from the premises in controversy. The narrow elongation of the plaintiff's land as described in his complaint can not invalidate his claim, or enable the defendant to appropriate any portion of it. Its width is equal to that of the forty-acre unit of the federal surveys; its length is not greater than the square mile from which that unit is obtained by subdivision; while, like the linear bases of the federal surveys, it extends due east and west, or as nearly so as the crude measurements of both parties without instruments could make it. For aught this court can determine, the plaintiff's claim may correspond to four continuous connected forty-acre tracts, yet to be indicated by those surveys, or even a slight variation, may be susceptible of easy territorial and legal adjustment. The plaintiff's offer to buy his peace and avoid a lawsuit for seventy-five dollars was not the surrender of any legal advantage or the admission of an adverse claim, rejected, as it seems to have been by the defendant, to whom it was made. Part of the syllabi of some cases were cited without comment as adverse to the present case, which was submitted without oral argument. On examination, however,

they do not seem to have such analogy of fact to the present case, as to make them legal precedents for its determination.    Surely the Arizona settler, who suffers so much peril and privation in the location of his homestead, ought not to be ousted by precedents of doubtful application, born elsewhere of the mere safety and comforts of more favored regions.    The determination of fact, and the conclusions of law, in the present case, are stated by the court below in its written decision with considerable prolixity and informality, but with sufficient certainty to show that the judgment entered thereon ought to be maintained.

The order of this court, therefore, is that the judgment of the district court of the third judicial district in the present case be affirmed, and that it be remanded there for execution.